USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/14/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

Crystal H.,
o.b.o. J.H., a minor child,

Plaintiff,

-against-

Frank Bisignano,
Commissioner of Social Security,

Defendant.

---------------------------------------------------------------X

7:25-cv-04840-VR

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**[1]

Crystal H., on behalf of J.H., a minor, brings this action under 42 U.S.C. §405(g). She seeks judicial review of a final determination of the Commissioner of Social Security (the "Commissioner"), which denied Plaintiff's application for disability benefits under the Social Security Act and found that J.H. was not disabled. Plaintiff now moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (ECF Nos. 16, 17), which the Commissioner opposes (ECF No. 19). For the reasons below, Plaintiff's motion is **GRANTED,** and the action is **REMANDED** for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g).[2]

[1] This action is before the undersigned after the parties consented to this Court's jurisdiction for all purposes, under 28 U.S.C. § 636(c), on June 16, 2025. (ECF No. 9).

[2] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

# I. BACKGROUND

The facts below are taken from the Social Security Administration's administrative record ("R."), filed by the Commissioner on November 21, 2025. (ECF No. 15).[3]

## A. Procedural History

On May 20, 2022, Plaintiff filed for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act on behalf of her minor son, J.H., alleging that he had been disabled since January 25, 2013, due to Autism Spectrum Disorder (ASD) and Attention Deficit Hyperactivity Disorder (ADHD). (R. 10; ECF No. 17 at 5).[4] Plaintiff's claims were initially administratively denied on February 13, 2023. (R. 110–117). She filed for a reconsideration, which was also denied on July 12, 2023. (*Id.* at 103–108, 120–122). On September 6, 2023, she requested a hearing before an Administrative Law Judge (ALJ). (*Id.* at 124). On March 5, 2024, ALJ Moises Penalver held a telephonic hearing, at which Plaintiff appeared with an attorney and testified. (*Id.* at 30–65). ALJ Penalver did not issue a decision, and the case was reassigned "to ensure that the claimant will have their case heard or

---

[3] The undersigned conducted a plenary review of the entire administrative record, familiarity with which is presumed. The undersigned assumes knowledge of the facts surrounding J.H.'s medical and educational history and does not recite them in detail, except as relevant to the analysis set forth in this Opinion and Order.

[4] All references to the record ("R.") refer to the sequentially numbered pages on the bottom right-hand corner of the administrative record filed by the Commissioner. This Opinion and Order refers to medical and educational records, as the ALJ does, by their exhibit number (e.g., Ex. 1A) and the internal page number within the exhibit (e.g., Ex. 1A at 1–12). This Opinion and Order also includes in parentheses the corresponding page number within the exhibit (e.g., Ex. 1A at 1–12 (R. 90–101)). Otherwise, all references to documents filed on ECF refer to ECF pagination, printed in blue on the top of each page.

decided in a timely manner." (*Id.* at 182). More than a year later, on April 1, 2025, ALJ Brian Battles held a new hearing, at which Plaintiff appeared with an attorney and testified. (*Id.* at 66–89). On April 15, 2025, ALJ Battles issued a written decision in which he concluded that J.H. was not disabled under the Social Security Act. (*Id.* at 7–24). The ALJ reasoned that J.H. did not have "an impairment or combination of impairments that functionally equals a listing," because he did not have "either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning." (*Id.* at 20). Plaintiff sought review from the Appeals Council, which denied her request, rendering the ALJ's decision final. (*Id.* at 1–6; 20 C.F.R. § 416.1481). On June 9, 2025, Plaintiff brought this civil action in the Southern District of New York for judicial review of that decision. (ECF No. 1).

**B. Record Before the ALJ**

Plaintiff has provided summaries of the testimonial, medical, and educational record evidence in the administrative record. (ECF No. 17 at 6–12). The Commissioner adopted Plaintiff's summaries of the relevant facts, except for any inferences, arguments, or conclusions therein. (ECF No. 19 at 6). Based on an independent and thorough examination of the record, the undersigned finds that Plaintiff's summaries of the evidence are largely comprehensive and accurate. Thus, the undersigned adopts these summaries and discusses the record in more detail only as necessary to dispose of the issues raised. *See, e.g.*, *Lieberman v. Kijakazi*, No. 19-cv-2870, 2022 WL 20487096, at *2 (S.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2024 WL 985112, (S.D.N.Y. Mar 7, 2024).

## II. LEGAL STANDARDS

### A. Standard of Review

This Court "engage[s] in limited review" of the Commissioner's decision. *Schillo v. Saul*, 31 F.4th 64, 74 (2d Cir. 2022). It "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Id.* (citation omitted); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

"The substantial evidence standard is a very deferential standard of review." *Schillo*, 31 F.4th at 74 (internal quotation marks and citation omitted). It is not the function of the Court "to determine de novo whether a plaintiff is disabled." *Id.* (citation omitted). Instead, the Court asks whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). In doing so, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Id.* (citation omitted). Put differently, "once an ALJ finds facts, [this Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (internal quotation marks and citation omitted) (emphasis in original).

Deference, however, does not extend to legal error. "[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). Thus, "[f]ailure to apply the correct legal standards is grounds for reversal." *Id.* (citation omitted). Remand may also be appropriate when "there are gaps in the administrative record" or when the ALJ's rationale is unclear in relation to the evidence in the record. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996); *accord Fowlkes v. Adamec*, 432 F.3d 90, 98 (2d Cir. 2005). In such cases, remand "for further development of the evidence" or for a clearer explanation of the ALJ's reasoning may be warranted. *Pratts*, 94 F.3d at 39 (internal quotation marks and citations omitted).

**B. Statutory Disability**

An individual under the age of 18 is considered disabled if she is not engaged in "substantial gainful activity" and has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

The Commissioner applies a three-step analysis to evaluate whether a person under the age of eighteen qualifies for disability benefits. 20 C.F.R. § 416.924(a)–(d). First, the ALJ considers whether the child is engaged in "substantial gainful

activity." *Id.* at § 416.924(b). Second, the ALJ determines whether the child has a "medically determinable impairment [or combination of impairments] that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id.* at § 416.924(c). And third, if the ALJ finds a severe impairment, he or she must then consider whether the impairment, or combination of impairments, meets, "medically equals" or, as is most pertinent here, "functionally equals" a disability listed in the regulatory "Listing of Impairments" at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.924(c)–(d). An ALJ who makes an adverse finding at step three of the sequential analysis must "set forth a specific rationale" to support their conclusion. *Becerril o/b/o JAT v. Comm'r of Soc. Sec.*, No. 18cv8513(NSR)(JCM), 2019 WL 5722121, at *8 (S.D.N.Y. Aug. 29, 2019), *report and recommendation adopted,* No. 18cv8513(NSR)(JCM), 2019 WL 4593622 (S.D.N.Y. Sept. 23, 2019) (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

To determine whether a child's impairment or combination of impairments functionally equals a listed impairment, the ALJ must evaluate the child's functioning across six domains of functioning:

> (1) acquiring and using information,
> (2) attending and completing tasks,
> (3) interacting and relating with others,
> (4) moving about and manipulating objects,
> (5) caring for yourself, and
> (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i–vi). "[A] finding of 'extreme' limitation in one domain or of 'marked' limitation in two domains satisfies this criterion of functional

equivalence." *Miller v. Comm'r of Soc. Sec.*, 409 F. App'x 384, 386 (2d Cir. 2010) (citing 20 C.F.R. § 416.926a(a)). A "marked limitation" is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme limitation" is one where a claimant's impairment "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* at § 416.926a(e)(3)(i).

## III. THE ALJ'S DECISION

To assess J.H.'s disability claim, the ALJ applied the three-step sequential analysis for individuals under the age of eighteen. (R. 11). At step one, the ALJ concluded that J.H. had not engaged in substantial gainful activity since May 20, 2022, the date of filing for disability benefits. (*Id.*). At step two, the ALJ concluded that J.H. had the following severe impairments: Autism Spectrum Disorder (ASD) and Attention-Deficit Hyperactivity Disorder (ADHD). (*Id.*). At step three, the ALJ first found that J.H. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 12). In reaching this conclusion, the ALJ reasoned that the severity of J.H.'s impairments did not meet or medically equal listings 112.10 (Autism Spectrum Disorder) or 112.11 (neurodevelopmental disorder) because there was no evidence of extreme limitation in one or marked limitation in two of the following areas of mental functioning: (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. (*Id.* at 12–13).

The ALJ next concluded that J.H. did not have an impairment or combination of impairments that "functionally equals" the severity of the listings in 20 C.F.R. §§ 416.924(d) and 416.926(a). (*Id.* at 13). In doing so, the ALJ concluded that J.H. demonstrated "less than marked limitations" in the following four domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, and (4) moving about and manipulating objects. (*Id.* at 14). J.H. demonstrated "no limitation" in the remaining domains of (1) caring for himself and (2) health and physical well-being. (*Id.*). In so finding, the ALJ considered all relevant evidence, including objective medical evidence and other relevant evidence from medical sources; information from other sources, such as schoolteachers, family members, or friends; the claimant's statements; and other relevant evidence in the record, including how the claimant functions over time and in all settings. (*Id.*). The ALJ then concluded that J.H. had not been disabled since the date the application was filed on May 22, 2022. (*Id.* at 20).

## IV. **DISCUSSION**

Plaintiff challenges the ALJ's determination at step three of the sequential analysis, in which the ALJ found that J.H. did not have an impairment or a combination of impairments that meet, equal, or functionally equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (ECF No. 17 at 15–20). As noted above, the ALJ found that J.H. had only less than marked limitations or no limitation across all six domains of functioning. (R. 14).

Plaintiff argues that substantial evidence does not support the ALJ's findings that J.H. had less than marked limitations in two domains, "attending and completing tasks" and "interacting and relating with others," and that those findings constitute legal error. (ECF No. 17 at 15–20). In response, the Commissioner argues that substantial evidence supports these findings, which are based on a proper evaluation of the relevant record evidence, and that the decision is free of legal error. (ECF No. 19 at 8–14). For the reasons below, the Court agrees with Plaintiff.

### A. Substantial Evidence Does Not Support the ALJ's Finding of a Less than Marked Limitation in Attending and Completing Tasks.

The ALJ found that J.H. had a "less than marked limitation" in the domain of attending and completing tasks. This domain considers "how well [the claimant] is able to focus and maintain [their] attention, and how well [they] begin, carry through, and finish [their] activities, including the pace at which [they] perform activities and the ease with which [they] change them." 20 C.F.R. § 416.926a(h). Based on a review of the administrative record, the Court finds that substantial evidence does not support the ALJ's finding.

The record contained evidence from J.H.'s mother, treatment providers, school records, consultative examiners, and a school counselor. (*See generally* R. 14–20). J.H.'s mother reported that he could not keep busy on his own, finish what he started, sustain work on arts and crafts projects, complete homework, or complete chores most of the time. (Ex. 4E at 9 (R. 274)).

Treatment records documented longstanding concerns about J.H.'s ability to focus and his eventual ADHD diagnosis (Ex. 6F at 2–3, 9 (R. 424–25, 431)), although a 2024 "physical" briefly described his ADHD and ASD as "well controlled" and stated that he was "doing well in school" (Ex. 17F at 1 (R. 586)).

The school records were more detailed. In January 2023, school psychologist Joanna Lundy evaluated J.H. and found that he was distractable during larger group activities and did not retain information. (Ex. 12F at 3–24 (R. 515–36)). When distracted, J.H. made noises, picked at his desk, or drew in his notebook. (*Id.* at 23 (R. 535)). Even after a focusing prompt, he could attend to a task for only about three to five minutes before needing continuous prompts. (*Id.*). A fidget toy appeared to improve his focus during testing, allowing him to pay adequate attention during that session. (*Id.*).

Other school records documented similar problems. A February 2023 classroom observation showed that J.H. had trouble being attentive and completing classwork, though he was easily redirected. (*Id.* at 1 (R. 513)). A March 2023 IEP reported difficulties with attention, completing classwork, and following teacher's directions, along with off-task behavior that distracted his peers. (Ex. 4F at 27 (R. 387)). J.H. also had difficulty focusing on long text, required focus prompts, failed to follow along, and missed important information. (*Id.* at 30 (R. 390)). A later IEP report from the fall of 2024 stated, among other things, that J.H. "respond[ed] well with positive reinforcement," but "has not demonstrated being able to work independently at home or in school." (Ex. 15F at 2–3 (R. 556–57)).

The opinion evidence was mixed. Consultative examiner John Laurence Miller, Ph.D., concluded that "[t]he claimant's ability to attend to, follow, and understand age-appropriate directions, sustain concentration and complete age-appropriate tasks, and learn in accordance to cognitive functioning is mildly limited." (Ex. 2F at 4 (R. 340)). The ALJ found that opinion only "somewhat persuasive" because it conflicted with IEP and school records documenting greater difficulties. (R. 18). By contrast, the ALJ rejected school counselor Latish Thomas, LCSW's assessment of an extreme limitation as "excessive and inconsistent with the totality of the record." (R. 19–20). Ms. Thomas explained that J.H. "engages in noncompliance, task initiation, off task behavior, aggression and inappropriate talk when there is a change in activity, given corrective feedback, unstructured time, independent work, class instruction, and transitions." (Ex. 16F at 3 (R. 577)).

The Court does not reweigh the evidence above or decide in the first instance whether J.H.'s limitation in attending and completing tasks was indeed less than marked. But substantial-evidence review requires enough explanation to permit the Court to determine whether the ALJ's finding rests on a reasonable reading of the record. Here, the decision does not provide a sufficiently clear, record-supported path from the evidence the ALJ cited to his finding of a less than marked limitation.

First, the ALJ did not adequately explain how the portions of Dr. Lundy's evaluation on which he relied supported his conclusion. (R. 16–17). The ALJ acknowledged that J.H. was distractable in school and noted that focusing prompts and a fidget toy improved his focus. (Ex. 12F at 23 (R. 535)). But the same report

described J.H.'s "difficulties with all aspects of executive functioning" and reported scores in the "clinically elevated range" on multiple test scales, including the ability to plan/organize, task-monitor, emotional control, cognitive regulation, and behavior regulation. (*Id.* at 5–10 (R. 517–22)). The report also stated that, when distracted, J.H. made noises, picked at his desk, or drew in his notebook, and that even after a focusing prompt, he could attend to a task for only about three to five minutes before needing continuous prompts. (*Id.* at 23 (R. 535)).

The decision does not explain how the limited improvement the ALJ identified—better focus with prompting and a fidget toy—supported a less than marked limitation when the same report showed that J.H.'s attention remained brief and dependent on continuing support. "Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevant evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-CV-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018); *see also Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination . . . . It is grounds for remand for the ALJ to ignore parts of the record that are probative of the claimant's disability claim.").

Second, the treatment notes on which the ALJ relied did not meaningfully address J.H.'s functioning in this domain. The 2021 note documented school-related

behavioral concerns (Ex. 6F at 9 (R. 431)); the 2023 note reflected an ADHD diagnosis and continuing behavioral concerns (*Id.* at 2–3 (R. 424–25)); and the 2024 note stated that J.H.'s ADHD and ASD were "well controlled" and that he was "doing well in school" (Ex. 17F at 1 (R. 586)). Those brief notations say little about J.H.'s ability to sustain attention, complete tasks, or work independently throughout a school day. *See Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 157 (2d Cir. 2024) ("[T]he ALJ appears to have misconstrued both [the doctor's] role in [claimant's] care and the evidence that was available to him as a basis for the opinion he expressed, [where the doctor] was primarily responsible for her medication management…and his treatment notes often took the form of a short note expressing [claimant's] 'chief complaint,' followed by any changes in her medication….").

The ALJ also inferred from the 2024 description of J.H. as an "ADHD/ASD patient, well controlled" that medication had controlled his condition. (Ex. 17F at 1 (R. 586)). But the note did not say that J.H.'s behavior was well controlled *because of* ADHD medication, nor did it describe his functioning in attending and completing tasks. *See, e.g.*, *Patrick B. o/b/o D.B. v. Saul*, No. 8:19-CV-0823 (LEK), 2020 WL 6287482, at *6 (N.D.N.Y. Oct. 27, 2020) ("[T]he ALJ assigned undue weight to the supposed effects of Plaintiff's new ADHD/ODD medications. The fact that Plaintiff is being treated for ADHD and ODD may show precisely how severely he is limited by these disorders." (citations omitted)). Indeed, the Second Circuit has "cautioned ALJs against scouring medical notes to draw their own conclusions

based on isolated descriptions." *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 10 (2d Cir. 2020) (citation omitted).

Later school evidence further limits what can reasonably be inferred from that 2024 treatment note. A December 2024 functional behavior assessment—completed after the 2024 treatment note—documented continuing problems with focus and attention. (Ex. 15F at 2 (R. 556). It found that when J.H. was presented with "a change in activity, given instruction, given corrective feedback, has unstructured time…has independent work, whole class instruction, is in the gym, cafeteria, or in transition, he engages in[] noncompliance, task initiation, off task behavior, aggression, and inappropriate talk." (*Id.*). As the Second Circuit has cautioned, sporadic improvement in a mental-health condition does not necessarily conflict with greater limitations measured over time. *See Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 74–75 (2d Cir. 2025).

Third, the ALJ treated J.H.'s response to positive reinforcement as evidence of greater functioning without adequately accounting for the support required to produce that functioning. The ALJ relied on evidence that J.H. "respond[ed] well with positive reinforcement." (R. 20; Ex. 15F at 3 (R. 557)). But the same school record stated that because of attention challenges, J.H. "has not demonstrated being able to work independently at home or in school" and "has not completed homework assignments…without the support of a teacher or a paraprofessional at his side completing the work with him." (Ex. 15F at 2 (R. 556)). Other school records similarly stated that J.H. "struggles with following classroom procedures and

initiating tasks" and engages in noncompliant and off-task behavior, such as "failing to comply with staff requests or instructions," "refusing to initiate schoolwork/assignments," and "appearing to do nothing" in class. (Ex. 14F at 1 (R. 541); Ex. 15F at 2 (R. 556)).

That context matters because the childhood-disability regulations require consideration not simply of whether a child can function successfully, but of how much assistance the child needs and how the child functions in a "structured or supportive setting." *See* 20 C.F.R. §§ 416.924a(b)(5), 416.926a(b). Thus, J.H.'s response to positive reinforcement does not by itself establish a less than marked limitation. If adequate functioning depended on repeated prompting, reinforcement, or other support, that dependence was itself part of the functional inquiry.

Finally, the ALJ did not adequately explain why Ms. Thomas's assessment was inconsistent with the record. Ms. Thomas completed a childhood functional questionnaire in February 2025 after meeting with J.H. weekly for approximately six months as his school counselor. (Ex. 16F at 1–11 (R. 575–85)). She found an extreme limitation in attending and completing tasks. (*Id.* at 3 (R. 577)). Although the ALJ acknowledged that Ms. Thomas supported her conclusions with explanations, he found her assessment "not persuasive" because "they are excessive and inconsistent with the totality of the record." (R. 19).

The ALJ was not required to accept Ms. Thomas's assessment or her conclusion that J.H.'s limitation was extreme. But the reasons he gave do not adequately explain why her assessment was inconsistent with the record. The ALJ

principally relied on the same indicators discussed above: J.H.'s response to positive reinforcement and the 2024 treatment notation describing his ADHD as well controlled. (R. 20; Ex. 15F at 3 (R. 557); Ex. 17F at 1 (R. 586)). For the reasons already explained, the school record that noted J.H.'s response to positive reinforcement also documented that he could not work independently and required substantial adult support, while the brief treatment notation did not describe his ability to sustain attention or complete tasks. Thus, those observations do not, without further explanation, establish an inconsistency between Ms. Thomas's assessment and the record as a whole. *See Nunez*, 164 F.4th at 75–76.

In short, the ALJ relied on isolated signs of improved functioning without adequately addressing contrary findings in the same records or the substantial support J.H. required. The decision thus does not provide a sufficiently clear, record-supported basis for finding a less than marked limitation in attending and completing tasks. "We have said more generally (and now repeat) that where we are unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ, we will not hesitate to remand for further findings or a clearer explanation for the decision." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (internal quotation marks and citation omitted). Remand is therefore warranted so that the ALJ may reevaluate J.H.'s limitation in attending and completing tasks and explain that determination based on the record as a whole.

### B. Substantial Evidence Does Not Support the ALJ's Finding of a Less than Marked Limitation in the Domain of Interacting and Relating with Others.

The ALJ also found that J.H. had a "less than marked limitation" in the domain of "interacting and relating with others." For a school-aged child like J.H., this domain includes the ability to "develop more lasting friendships" with peers, "understand how to work in groups," "understand another's point of view," and "talk to people of all ages" in a manner that listeners readily understand. 20 C.F.R. § 416.926a(i)(2)(iv). Substantial evidence does not support that finding either.

The ALJ acknowledged substantial evidence of difficulty in this domain. J.H.'s mother reported that he "does not have friends his own age, cannot make new friends, does not get along with teachers or adults, and does not play tea[m] sports." (R. 17, citing Ex. 4E). School records from February 2023 observed that J.H. "distracted his peers and had trouble getting along with others in class." (*Id.*, citing Ex. 12F at 1). A March 2023 record stated that J.H. "distracted his peers, took offense at things, had trouble communicating feelings appropriately, struggled to deal with emotions in a healthy and positive way, got very upset, had disproportionate reaction to some situations, and often shut down." (*Id.*, citing Ex. 4F at 27, 33). And in December 2024, school records documented "aggression and inappropriate talk" and explained that J.H.'s "ASD limited his communication abilities with peers and adults, provided challenges understanding social cues, lowered his frustration tolerance, and caused difficulty understanding his role in interactions with others." (*Id.*, citing Ex. 14F at 1, 5).

The ALJ nevertheless found a less than marked limitation in interacting and relating with others primarily "due to friendly behavior shown during exams and his reports that he has a few friends with whom he gets along well." (R. 20, citing Ex. 12F at 23). He noted that J.H. reported to Dr. Miller that he had a few friends and displayed a generally cooperative demeanor during the consultative examination. (R. 17, citing Ex. 2F). He also relied on Dr. Lundy's observation that J.H. seemed "friendly and cooperative" during her psychoeducational evaluation. (*Id.*, citing Ex. 12F at 23). And he cited a 2024 treatment note stating that J.H. had "no behavioral concerns" (*Id.*, citing Ex. 17F at 1), along with his mother's report that J.H. was no longer in therapy. (*Id.*). Those reasons do not adequately explain the ALJ's conclusion.

First, the ALJ did not adequately explain how J.H.'s behavior during brief, structured, one-on-one examinations supported a less than marked limitation in a domain concerned more broadly with friendships, group interactions, understanding others' perspectives, and communication across settings. During Dr. Lundy's evaluation, J.H. was friendly and cooperative, established good rapport, and adhered to social norms of typical adult-child interaction. (Ex. 12F at 20 (R. 532)). Dr. Miller similarly observed a cooperative demeanor, appropriate eye contact, good intelligibility, and age-appropriate social skills during a single examination. (Ex. 2F at 3 (R. 339)).

But those observations were snapshots. Dr. Lundy's examination was her first meeting with J.H. and lasted about two hours. (Ex. 12F at 20 (R. 532)). Dr.

Miller examined J.H. on a single occasion. (Ex. 2F at 1 (R. 337)). Courts have cautioned against drawing broad conclusions about a child's social functioning from such encounters. *See Carson v. Colvin*, No. 6:12-CV-6553 MAT, 2014 WL 1746056, at *7 (W.D.N.Y. May 1, 2014) ("The fact that Claimant was cooperative and friendly in a single, controlled, situation, where she was interacting one-on-one with an authority figure is of negligible weight when compared to the oppositional and anti-social behaviors displayed by Claimant at home and at school."); *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) ("We have frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination. This concern is even more pronounced in the context of mental illness where…a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." (internal quotation marks and citation omitted)).

The ALJ's decision also fails to explain how and why J.H.'s behavior during these brief examinations accounted for the contrary record evidence about J.H.'s functioning over time and across settings. For example, Dr. Lundy's same evaluation found that J.H. exhibited "marked difficulty with some aspects of executive function," including his "ability to resist impulses; be aware of his functioning in social settings; [and] adjust well to changes in environment, people, plans, or demands." (Ex. 12F at 5 (R. 517)). J.H. also obtained scores within the "clinically elevated range" on the emotional control scale, suggesting that he "likely overreacts to events and likely demonstrates sudden outbursts, sudden and/or frequent mood changes, and excessive periods of emotional upset," and the self-

monitor scale, "suggesting marked difficulty with monitoring their behavior in social settings." (*Id.* at 7–8 (R. 519–20)). He further obtained a score in the Very Likely Range on the Gilliam Autism Rating Scale with a severity level of 3 "requiring substantial support," based on "restricted, repetitive patterns of behavior" and "persistent deficits in social communication and interaction within the home environment." (*Id.* at 9, 22 (R. 521, 534)). School records similarly documented that "[s]ocioemotionally, [J.H.] appeared having difficulty getting along with others in his class and sometimes taking offense at other's actions" (*Id.* at 1 (R. 513)), and that J.H. "has poor theory of mind," "cannot put himself in others['] shoes," and "has difficulty understanding his role in his interactions with others" (Ex. 15 F. at 3 (R. 557)).

J.H.'s report that he had "a few friends" does not fill that gap. (R. 20, citing Ex. 12F at 23). The domain does not ask merely whether a child has friends. It concerns the child's ability to develop lasting friendships, function in groups, understand another's point of view, and communicate appropriately with others. 20 C.F.R. § 416.926a(i)(2)(iv). The ALJ's decision does not explain how the existence of a few friendships accounted for J.H.'s documented difficulties with peer relationships, social cues, emotional regulation, physical boundaries, and understanding his role in interactions with others.

Second, the 2024 treatment note on which the ALJ relied did not meaningfully address J.H.'s functioning in this domain. (R. 17, citing to Ex. 17F at 1 (R. 585)). Although an earlier 2024 routine "physical" stated "no behavioral

concerns" (Ex. 17F at 1 (R. 585)), a December 2024 functional behavioral assessment documented aggression and inappropriate talk, limitations in J.H.'s ability to communicate with peers and adults, challenges understanding social cues, low frustration tolerance, and difficulty understanding his role in social interactions (R. 17, citing Ex. 14F at 1, 5 (R. 541, 545). The brief treatment notation does not address J.H.'s ability to form friendships, function with peers, understand social cues, regulate his behavior in social settings, or communicate appropriately with others. Nor did the ALJ explain why that general notation outweighed the more specific evidence bearing directly on this domain.

Finally, the ALJ did not adequately explain why Ms. Thomas's assessment was inconsistent with the record. Ms. Thomas, who met with J.H. once a week for six months, found extreme limitations in interacting and relating with others. (Ex. 16F at 1, 4 (R. 575, 578)). She explained that J.H. "struggles to maintain appropriate physical boundaries w[ith] peers," "can ignore and be dismissive w[ith] adults," does "not comply w[ith] directions," and "has challenges understanding social cues and has weak social pragmatics." (*Id* at 4 (R. 578)). She added that J.H. "has poor theory of mind, he cannot put himself in others['] shoes, and has difficulties understanding his role in his interactions w[ith] others." (*Id.*). The ALJ found her assessment "not persuasive" because, although supported by explanations, "they are excessive and inconsistent with the totality of the record." (R. 19).

Again, the ALJ was not required to accept Ms. Thomas's assessment. But he had to explain the asserted inconsistency. His stated reasons were J.H.'s "friendly behavior shown during exams and his reports that he has a few friends with whom he gets along well." (R. 20, citing Ex. 12F at 23 (R. 535)). As explained above, neither point, without more, shows an inconsistency. And the broader record contained evidence consistent with Ms. Thomas's assessment. The same Dr. Lundy evaluation cited by the ALJ documented clinically elevated scores on the emotional control and self-monitor scales and a score in the Very Likely Range on the Gilliam Autism Rating Scale with a severity "requiring substantial support." (Ex. 12F at 7, 8, 22 (R. 519, 520, 534)). Other school records also documented J.H.'s difficulty getting along with classmates, taking offense at others' actions, maintaining appropriate physical boundaries, understanding social cues, and understanding his role in social interactions. (*Id.* at 1 (R. 513); Ex. 15F at 3 (R. 557)). The decision thus does not explain why the evidence the ALJ cited rendered Ms. Thomas's assessment inconsistent with the broader record. Indeed, the Second Circuit has cautioned that "a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d at 98; *see also Ramirez v. Astrue*, No. 08 CIV. 7609 (SAS), 2009 WL 2356259, at *7–8 (S.D.N.Y. July 29, 2009) ("[T]he ALJ failed to address whether the one-time examinations of [consulting examiners] may have been conducted in unusual settings…[while] fail[ing] to give proper weight to the reports of those who had a substantial longitudinal picture of

[claimant's] functional limitations." (internal quotation marks and citation omitted)).

Thus, the ALJ's decision does not provide a sufficiently clear, record-supported explanation for finding a less than marked limitation in interacting and relating with others. Remand is warranted so that the ALJ may reevaluate J.H.'s limitation in this domain and explain his determination based on the record as a whole.

### C. The ALJ's Failure to Consider the Effects of a Structured or Supportive Setting Amounts to Legal Error

The ALJ also failed to adequately consider the effect of J.H.'s "structured or supportive setting" on his functioning. 20 C.F.R. § 416.926a(a)(1); *see also* 20 C.F.R. § 416.924a(b)(5)(iv). The regulations require more than an assessment of how well a child functions with support. "Even if you are able to function adequately in the structured or supportive setting, [the Commissioner] must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting." (20 C.F.R. § 416.924a(b)(5)(iv)(C)). "Courts in this District have not hesitated to remand when the ALJ has failed to consider adequately the effects of a structured setting on the claimant's limitations." *Marizan ex rel. A.O. v. Colvin*, No. 13cv3428 (VEC)(FM), 2014 WL 3905911, at *13 (S.D.N.Y. Aug. 11, 2014), *report and recommendation adopted*, (S.D.N.Y. Sept. 3, 2014); *see also Archer ex rel. J.J.P. v. Astrue*, 910 F. Supp. 2d 411, 426–27 (N.D.N.Y. 2012) ("Although the hearing officer need not make explicit reference to the effects of a structured or supportive setting in order to be

deemed to have sufficiently considered them, this district has typically elected to remand when it is evident that the [hearing officer] did not consider [this] factor." (citations omitted)).

The ALJ recited the general rule that he "must compare how appropriately, effectively and independently the claimant performs activities compared to the performance of other children of the same age who do not have impairments (20 CFR 416.926a)." (R. 13). But the decision does not show that he considered whether J.H.'s functioning depended on support. Instead, as discussed above, the ALJ repeatedly treated improved functioning with assistance as evidence of greater functioning, without asking whether J.H. could sustain that functioning without such assistance. (*See generally id.* at 14–20).

For example, the ALJ emphasized that a focusing prompt allowed J.H. to attend to tasks for three to five minutes and that a fidget toy improved his attention during testing. (Ex. 12F at 23 (R. 535)). Yet the same evaluation reported that J.H. required continuous prompts after those brief periods of attention and displayed substantial executive-functioning deficits. (*Id.* at 5–10, 23 (R. 517–22, 535)). The ALJ similarly noted that J.H. was "easily redirected," but school records documented his continuing need for redirection, prompting, and other supports. (*Id.* at 1 (R. 513)).

The same problem appears in the ALJ's reliance on J.H.'s response to positive reinforcement. (Ex. 15F at 3 (R. 557)). The cited IEP also stated that J.H. "has not demonstrated being able to work independently at home or in school" and "has not

completed homework assignments which demonstrate being able to practice reading skills outside of class and without the support of a teacher or a paraprofessional at his side completing the work with him." (*Id.* at 2 (R. 556)). That J.H. performed better when prompted, redirected, or assisted does not answer whether he could function adequately without those supports.

The issue also arises, though less starkly, in the ALJ's discussion of J.H.'s ability to interact and relate with others. The ALJ noted that J.H. benefitted from counseling services at school to help regulate his emotions, manage frustration, and acquire skills. (R. 17, citing Ex. 4F at 33 (R. 393)). But the decision does not address whether, or to what extent, J.H.'s functioning depended on those continuing supports. The ALJ also concludes his discussion of finding a less than marked limitation in this domain by noting J.H.'s mother's testimony at the hearing that "he is no longer in therapy." (*Id.*). But that mischaracterizes her testimony, which further explained that J.H. was no longer in therapy because "[t]hat didn't go so well." (R. 82). By relying on discontinuation of therapy as an indicator of improvement, where it might signify just the opposite, the decision fails to consider the full extent of J.H.'s need for supports. *See Morris on behalf of V.V. v. Comm'r of Soc. Sec.*, No. CV20CIV7017SLC, 2022 WL 298673, at *17 (S.D.N.Y. Feb. 1, 2022) ("While an ALJ is not always required to explicitly address the issue of how the child might function outside of structured settings, the Court is unable to conclude from [the] ALJ[]'s analysis that he gave any consideration to [claimant's] 'need for a structured setting . . . .'" (citing 20 C.F.R. § 416.924a(b)(5)(iv)).

The problem, then, is not merely that the ALJ failed to use the phrase "structured or supportive setting." Rather, the Court cannot discern whether he considered the functional significance of the supports J.H. required—particularly whether J.H.'s apparent successes reflected independent functioning or functioning made possible by sustained adult assistance. Because that inquiry bears directly on the degree of J.H.'s limitations in the relevant functional domains, the Court cannot conclude that the omission was harmless. Remand is therefore warranted.

## V. CONCLUSION

For the reasons above, Plaintiff's motion for judgment on the pleadings is **GRANTED**, and the action is **REMANDED** for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g). In light of the four years since Plaintiff filed the application for disability benefits on behalf of her child, including the delays in holding hearings before two separate ALJs before obtaining a decision, the Court urges the Commissioner to expedite further proceedings in this case.

The Clerk of the Court is respectfully directed to close the gavel on ECF No. 16 and enter judgment for Plaintiff.

**SO ORDERED.**

DATED: White Plains, New York
September 14, 2026

VICTORIA REZNIK
United States Magistrate Judge